Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DARRELL NASALROAD, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| ARENA PHARMACEUTICALS, INC., AMIT D. MUNSHI, GARRY A. NEIL, JAYSON DALLAS, OLIVER FETZER, KIERAN T. GALLAHUE, JENNIFER JARRETT, KATHARINE KNOBIL, TINA S. NOVA, NAWAL OUZREN, and STEVE SCHOCH, | |
| Defendants. | |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Darrell Nasalroad ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.     This is an action against Arena Pharmaceuticals, Inc. ("Arena" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

§§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Arena by Pfizer Inc. ("Pfizer").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Arena common stock.

7.      Defendant Arena is a biopharmaceutical company that focuses on providing novel medicines with pharmacology and pharmacokinetics to patients worldwide. The Company is

incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "ARNA."

8.      Defendant Amit D. Munshi ("Munshi") is President, Chief Executive Officer, and a director of the Company.

9.      Defendant Garry A. Neil ("Neil") is Chairman of the Board of the Company.

10.     Defendant Jayson Dallas ("Dallas") is a director of the Company.

11.     Defendant Oliver Fetzer ("Fetzer") is a director of the Company.

12.     Defendant Kieran T. Gallahue ("Gallahue") is a director of the Company.

13.     Defendant Jennifer Jarrett ("Jarrett") is a director of the Company.

14.     Defendant Katharine Knobil ("Knobil") is a director of the Company.

15.     Defendant Tina S. Nova ("Nova") is a director of the Company.

16.     Defendant Nawal Ouzren ("Ouzren") is a director of the Company.

17.     Defendant Steve Schoch ("Schoch") is a director of the Company.

18.     Defendants Munshi, Neil, Dallas, Fetzer, Gallahue, Jarrett, Knobil, Nova, Ouzren, and Schoch are collectively referred to herein as the "Individual Defendants."

19.     Defendants Arena and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

20.     On December 13, 2021, Arena and Pfizer announced that they had entered into a definitive agreement under which Pfizer would acquire all the outstanding shares of Arena for $100.00 per share in cash. The press release announcing the Proposed Transaction states, in pertinent part:

*Pfizer to Acquire Arena Pharmaceuticals*

*Proposed acquisition offers potentially new, differentiated best-in-class approach to address unmet need for a broader number of patients with immuno-inflammatory diseases*

*Expands innovative pipeline potentially enhancing growth through 2025 and beyond*

*Transaction valued at $100 per Arena share in cash, for a total equity value of approximately $6.7 billion*

*Pfizer to host analyst and investor call at 10am EST today with Pfizer I&I executives*

December 13, 2021 06:45 AM Eastern Standard Time

NEW YORK & PARK CITY, Utah--(BUSINESS WIRE)--Pfizer Inc. (NYSE: PFE) and Arena Pharmaceuticals, Inc. (Nasdaq: ARNA) today announced that the companies have entered into a definitive agreement under which Pfizer will acquire Arena, a clinical stage company developing innovative potential therapies for the treatment of several immuno-inflammatory diseases. Under the terms of the agreement, Pfizer will acquire all the outstanding shares of Arena for $100 per share in an all-cash transaction for a total equity value of approximately $6.7 billion. The boards of directors of both companies have unanimously approved the transaction.

Arena's portfolio includes diverse and promising development-stage therapeutic candidates in gastroenterology, dermatology, and cardiology, including etrasimod, an oral, selective sphingosine 1-phosphate (S1P) receptor modulator currently in development for a range of immuno-inflammatory diseases including gastrointestinal and dermatological diseases.

\*     \*     \*

Under the terms of the merger agreement, Pfizer will acquire all of the outstanding shares of Arena common stock for $100 per share in cash. The proposed transaction is subject to customary closing conditions, including receipt of regulatory approvals and approval by Arena's stockholders.

Pfizer's financial advisors for the transaction are BofA Securities and Centerview Partners LLC, with Ropes & Gray and Arnold & Porter Kaye Scholer LLP acting as its legal advisors. Guggenheim Securities, LLC and Evercore Group LLC served as Arena's financial advisors, while Cooley LLP served as its legal advisor.

\*     \*     \*

4

**About Arena Pharmaceuticals**

ARENA is a team with a singular purpose – deliver important medicines to patients. In a rapidly changing global market, we work with a sense of urgency every day to understand the needs of all our stakeholders, identify bold, sometimes disruptive, ideas to get medicines to patients, and relentlessly execute until it's done.

We are developing a richly diversified portfolio of therapeutic candidates targeting gastroenterology, dermatology, and cardiology. To fuel our growth, we are unlocking the value of our historical GPCR research with a sustainable discovery engine for broad portfolio expansion.

ARENA - Care More. Act Differently.

Etrasimod, temanogrel, and APD418 are investigational compounds that are not approved for any use in any country.

**About Pfizer: Breakthroughs That Change Patients' Lives**

At Pfizer, we apply science and our global resources to bring therapies to people that extend and significantly improve their lives. We strive to set the standard for quality, safety and value in the discovery, development and manufacture of health care products, including innovative medicines and vaccines. Every day, Pfizer colleagues work across developed and emerging markets to advance wellness, prevention, treatments and cures that challenge the most feared diseases of our time. Consistent with our responsibility as one of the world's premier innovative biopharmaceutical companies, we collaborate with health care providers, governments and local communities to support and expand access to reliable, affordable health care around the world. For more than 170 years, we have worked to make a difference for all who rely on us. We routinely post information that may be important to investors on our website at www.Pfizer.com. In addition, to learn more, please visit us on www.Pfizer.com and follow us on Twitter at @Pfizer and @Pfizer News, LinkedIn, YouTube and like us on Facebook at Facebook.com/Pfizer.

21.     On January 3, 2022, Defendants caused to be filed with the SEC a Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

**B.  The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

22.     The Proxy Statement, which recommends that Arena shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Arena's

5

financial projections; (ii) the financial analyses performed by Arena's financial advisors, Evercore Group L.L.C. ("Evercore") and Guggenheim Securities, LLC ("Guggenheim"), in connection with their fairness opinions; and (iii) potential conflicts of interest involving Company insiders.

23.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Board of Directors and Reasons for the Merger; (ii) Financial Projections; (iii) Opinion of Evercore Group L.L.C.; and (iv) Opinion of Guggenheim Securities, LLC.

24.     Unless and until the material misstatements and omissions (referenced below) are remedied before the February 2, 2022 shareholder vote on the Proposed Transaction, Arena shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1.     Material Omissions Concerning Arena's Financial Projections

25.     The Proxy Statement omits material information concerning Arena's financial projections.

26.     With respect to the Company's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying the projections; and (2) a reconciliation of all non-GAAP to GAAP metrics.

27.     The Proxy Statement provides that, in connection with its fairness opinion, Guggenheim "reviewed certain non-public business and financial information regarding Arena's business and future prospects (including the Projections) and certain other estimates and other forward-looking information), all as prepared and approved for Guggenheim Securities' use by Arena's senior management (collectively, the "Arena-Provided Information")[.]"

28.     The Proxy Statement, however, fails to disclose the "certain non-public business

and financial information regarding Arena's business and future prospects . . . and certain other estimates and other forward-looking information . . . prepared and approved for Guggenheim Securities' use by Arena's senior management[.]"

29.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of Arena and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

30.     When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-

31.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2.  Material Omissions Concerning Evercore's and Guggenheim's Analyses**

32.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Evercore and Guggenheim.

33.     The valuation methods, underlying assumptions, and key inputs used by Evercore and Guggenheim in rendering their purported fairness opinions must be fairly disclosed to the Company's shareholders. The description of Evercore's and Guggenheim's fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses.

34.     Without the information described below, the Company's shareholders are unable to fully understand Evercore's and Guggenheim's fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**A.  *Evercore's Analyses***

35.     The Proxy Statement fails to disclose the following concerning Evercore's "*Discounted Cash Flow Analysis*": (1) the terminal values for Arena; (2) the individual inputs and assumptions underlying the (i) perpetuity growth rates of negative 60.0% to negative 80.0%, and

---

speech.html (footnotes omitted) (last visited Jan. 11, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

(ii) discount rates ranging from 8.5% to 10.0%; (3) the upfront payment made to Aristea on July 27, 2021; (4) Arena's net debt as of December 10, 2021, certain minority interests, the cost of projected future capital raises, and the present value of tax savings from Arena's estimated usage of net operating losses; and (5) the number of fully diluted shares of the Company's common stock.

36.     With respect to Evercore's "*Selected Transactions Analysis*," the Proxy Statement fails to disclose the implied equity value of each target company selected by Evercore.

37.     The Proxy Statement fails to disclose the following concerning Evercore's "*Equity Research Analyst Price Targets*" analysis: (1) the individual price targets observed by Evercore in its analysis; and (2) the sources thereof.

38.     With respect to Evercore's "*Selected Public Company Trading Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company Evercore observed in its analysis.

39.     With respect to Evercore's "*Premiums Paid Analysis*," the Proxy Statement fails to disclose each transaction and the individual premiums paid therein.

**B.  *Guggenheim's Analyses***

40.     The Proxy Statement fails to disclose the following concerning Guggenheim's "*Arena Discounted Cash Flow Analysis*": (1) the terminal value of Arena; and (2) the individual inputs and assumptions underlying the (i) discount rate range of 8.00% – 9.75%, and (ii) perpetual growth rate of negative 70%.

41.     The Proxy Statement fails to disclose the following concerning Guggenheim's "*Arena Wall Street Equity Research Analyst Stock Price Targets*" analysis: (1) the individual price targets observed by Guggenheim in its analysis; and (2) the sources thereof.

42.     With respect to Guggenheim's "*Premia Paid in Selected Precedent Merger and*

*Acquisition Transactions*," the Proxy Statement fails to disclose each transaction and the individual premiums paid therein.

### 3. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

43.    The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

44.    The Proxy Statement provides the following concerning the interests of the Board and the Company's officers in the Proposed Transaction:

**Interests of Arena's Directors and Executive Officers in the Merger**

\*        \*        \*

*Arrangements with Pfizer*

As of the date of this proxy statement, none of our executive officers has entered into any agreement with Pfizer or any of its affiliates regarding employment with, or the right to purchase or participate in the equity of, the Surviving Corporation or one or more of its affiliates.

45.    The Proxy Statement, however, fails to disclose whether any of the Company's directors have any agreements or understandings with Pfizer to serve as officers and/or directors of the combined company following consummation of the Proposed Transaction.

46.    The Proxy Statement further fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

47.    Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in

the best interests of the Company's shareholders.

48.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

<u>**COUNT I**</u>
**For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder**
<u>**Against All Defendants**</u>

49.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

51.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

52.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

53.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

54.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

55.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

57.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

58.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged

12

herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

59.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

60.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 11, 2022                          Respectfully submitted,

                                                 **HALPER SADEH LLP**

                                                 By: /s/ Daniel Sadeh
                                                 Daniel Sadeh, Esq.
                                                 Zachary Halper, Esq. (to be admitted *pro hac vice*)
                                                 667 Madison Avenue, 5th Floor
                                                 New York, NY 10065
                                                 Telephone: (212) 763-0060
                                                 Facsimile: (646) 776-2600
                                                 Email: sadeh@halpersadeh.com
                                                          zhalper@halpersadeh.com

                                                 *Counsel for Plaintiff*